ÁNGEL SIERRA NÚÑEZ, Petitioner and Appellant, *v.* CONSTRUCTION EQUIPMENT CORPORATION, Defendant and Appellee.

No. CE-63-13.    Decided February 27, 1964.

---

*Ismael Cardona* for appellant. *Celestino Morales, Jr.*, and *Francisco L. Acevedo Nogueras* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

On September 22, 1961, worker Ángel Sierra Núñez appeared in the District Court, Río Piedras Part, and filed a complaint against his employer, Construction Equipment Corporation in which, insofar as pertinent, he alleged:

"SECOND: That the above-entitled respondent is engaged in a profitable construction business in Puerto Rico, and contracted and used petitioner's services from approximately February 1960 to August 1961 as transit mix operator, having paid him wages of $1.05 per hour during all that time.

"THIRD: That respondent owes petitioner the amount of $533 resulting from the difference in wages because it paid him wages lower than the minimum and failed to pay him at double time for the 15 minute coffee break during which he was compelled to work in violation of decrees Nos. 11 and 14.

"FOURTH: That in addition to the aforestated amount petitioner claims from respondent an equal amount as penalty of law for the total amount of $1,066."

In its answer respondent stated:

"It accepts the second paragraph of the complaint insofar as respondent paid petitioner a wage of $1.05 per hour, and that it used petitioner's services from May 18, 1960 to August 22, 1961, and on the contrary, it alleges that the wage paid to said petitioner of $1.05 per hour conformed to the provisions of the law and particularly to the provisions of Mandatory Decree No. 36 of the Minimum Wage Board applicable to the stone, glass, and related products industry for the local trade of Puerto Rico. That in Art. II, § 8, subd. 5 'ready-mixed concrete' is included. That said petitioner was a driver within the meaning of said Mandatory Decree No. 36 and he was only entitled to the minimum wage of $1.05 per hour which was paid to him."

After a trial on the merits, on September 7, 1962, the District Court, Río Piedras Part, rendered judgment "dismissing the complaint." The judgment was mainly grounded on the conclusion that respondent "was not engaged in the

construction business during the employment period in question and that petitioner was not an employee of the construction business as defined by Mandatory Decree No. 44 which covers the construction industry." In its findings it also held that Mandatory Decree No. 36 was the one applicable to petitioner and that the same did not grant the 15 minute coffee break to which the complaint referred. Petitioner appealed.

On February 1, 1963 the Superior Court, San Juan Part, affirmed the decision of the district court in the following terms:

"The only question to decide is whether the decree applicable in this case is Mandatory Decree No. 44 of September 6, 1960 or Mandatory Decree No. 36 of March 5, 1960.

"Ángel Sierra Núñez worked as driver of a truck belonging to defendant Construction Equipment Corporation in a ready-mixed concrete plant serving the Metropolitan Construction Corporation, builder of a public housing project.

"Defendant was not the builder of the project. It served ready-mixed concrete to the builder. Mandatory Decree No. 36, which comprises all the necessary operations or those related with the manufacture of ready-mixed concrete, is applicable to defendant.

"The error alleged was not committed. The judgment appealed from is affirmed."

At the request of the worker, under the authority conferred upon us by §§ 7(a) and 14(d) of Act No. 11 of July 24, 1952 now in force, we issued a writ of certiorari to review the judgment of the Superior Court.

The commission of a single error is assigned: the improper application of Mandatory Decree No. 36 which governs the stone, glass, and related products industry approved by the Minimum Wage Board on November 29, 1957, as it was first revised in 1960.

After an examination of all the points raised and discussed, we decide that the worker-petitioner is correct in

maintaining that Mandatory Decree No. 44 is the one applicable in his case and his wage should be computed and paid, including the coffee break, according to said Decree No. 44, related to the construction industry of 1958, according to its first revision effective September 6, 1960, which fixes a minimum wage of $1.25 per hour of work.[1]

Let us turn to the decrees in question. The part of the definition offered by Decree No. 44 for the Construction Industry with which we are concerned is the following:

*"The Construction Industry for the Local Trade* shall comprise: without limitation, every act, process, operation, work or service *necessary or incidental, or related to* the designing, project, *fabrication,* reconstruction, alteration, repair, conservation or maintenance of buildings, works or constructions." (Italics ours.)

Let us examine, on the other hand, the definition for the industry in question contained in Decree No. 36:

*"The Stone, Glass and Related Products Industry* comprises the mining, quarrying, or other extraction and the further processing of any mineral (other than clay, metal ores, chemical and fertilizer minerals, coal, petroleum, or natural gases). It shall also comprise the manufacture of products from such minerals, including, but without limitation, glass and glass products; dimension and cut stone; crushed stone, sand and gravel, abrasives; lime, concrete, gypsum, mica, plaster and asbestos products; and the manufacture of products from bone, horn, ivory, shell and similar natural materials.

"Likewise it shall comprise any work or service necessary or related to the activities already mentioned."

Petitioner's work consisted in taking the truck to the manufacturing plant where he received the ready-mixed concrete and transported it to the construction site. It will

---

[1] It underwent a second revision in 1962 effective May 21 of said year.

The first decree on the construction industry was No. 11, which was enacted on July 1, 1946, and which was amended on December 20, 1955, but was superseded, in part, by No. 44.

be noticed that when petitioner's intervention starts in the place of operations the manufacture of the ready-mixed concrete has been completed, there remaining only its delivery to the construction enterprise. From the pertinent part of Decree No. 36 copied above, it shall be understood that the application thereof presupposes a manufacturing activity, that is, the exclusive manufacturing process of any of the products therein stated. It is confirmed by the following meaning prescribed by Decree No. 36 for the 5th classification of said industry:

"(5) *Ready-Mixed Concrete:* Shall comprise all the operations necessary or related *to the manufacture* of ready-mixed concrete." (Italics ours.)

■ The delivery of the ready-mixed concrete from the plant of manufacture to the site of the construction is comprised in the definition of the construction industry provided by Mandatory Decree No. 44. It is an act, process, operation, work, or service necessary or related to the construction of buildings.

Other parts of said decrees lead us to the inevitable conclusion that the applicable decree is No. 44 and not No. 36, as the trial courts understood.

In the groups of occupations pointed out in Mandatory Decree No. 44 there is one designated "Group C" within which there appears the category designated as "transit mix operator."[2] Precisely, it was in said capacity that petitioner was employed for the period of time that he worked for appellee. On the other hand, Decree No. 36 includes three kinds of drivers, none of which performs a work similar to the one performed by petitioner herein, namely:

"2. *Dump-truck Driver* (A) is the one in charge of driving a truck which is mechanically unloaded, and loaded, for the transportation of *dimension stone from the mine to the crusher.*

---

[2] This "occupation" is not included in Mandatory Decree No. 11.

"3. *Dump-truck Driver* (B) is the one in charge of driving a truck which requires to be loaded and unloaded by hand, *for the transportation of dimension stone from the mine to the crusher.*

"4. *Delivery-truck Driver* is the one in charge of driving a truck *for the delivery of stone* to the consumers." (Italics ours.)

Both courts understood that the application of the Decree No. 44 depended entirely on the fact that petitioner's employer was engaged in the construction industry. We do not consider it so. Mandatory decrees must be construed in harmony with the provisions of the Act authorizing their promulgation. *Lugo* v. *Marini,* 72 P.R.R. 483, 486 (1951).

■ The essential basis for fixing minimum wages, defining and classifying industries pursuant to that statute— 29 L.P.R.A. § 223—is the nature of the services to be rendered by the employee who performs them, no matter in what type of occupation the enterprise or employer employing him is engaged. It is even better explained by what we said in *Commissioner of Labor* v. *Llamas,* 73 P.R.R. 847, 871 (1952) : ". . . the Minimum Wage Board has the power to classify the work of any occupation, business or industry according to the nature of the services rendered and to fix wages for different kinds of works. *It implies the faculty to establish a difference between different kinds of employees and therefore to include different kinds of employees in different decrees.*" (Italics ours.)

■ In other words, an enterprise may not be engaged in the construction industry and, yet, some of its employees may be performing services, functions and activities inherent in the construction industry. In such a case the employee is not deprived of the protection afforded by the specific decree concerning his particular work, nor does his employer's activity forfeit the characteristic of an enterprise engaged in this or that purpose pursuant to the decree which properly covers it.

It is very significant that in the definition of the "stone, glass, and related products industry for the local trade in

Puerto Rico," provided by Decree No. 36, it is stated: "However, the definition shall not include: any product or activity included in the construction . . . industry . . . " 29 R.&R. P.R. § 245n–582. Therefore, the work of the transit mix operator is not affected by Mandatory Decree No. 36.

■ As the last point we refer to the coffee break which appellant claims should be paid at the rate of twice the regular wage. Section VII(B) on the working conditions of Decree No. 44 (effective September 6, 1960) provides that: "After the first two working hours the employer is under obligation to grant at least fifteen (15) minutes off for the employee to take a light meal . . . ." Nevertheless, it does not state that it should be paid at the rate of twice the regular wage in case it is worked. It only adds: ". . . which 15 minutes shall be considered as worked to all effects." If the intention had been to bind employer to pay at the rate of twice the regular wage, it would have expressly stated so. Particularly, because the other two working conditions provided in said section (A. Weekly Rest Day, and C. Lunch Period) provide for pay at the rate of twice the regular wage in case the employer requires or permits the employee to work during said rest periods. It must be construed, then, that in case the employee works during the coffee break the pay shall be at the regular wage rate. That is, the time not worked having been already included at the regular wage rate within the basic pay, it remains to include another part (the one actually worked) at the regular wage rate also. Only that the latter shall be fixed on the basis of the minimum hourly wage provided for Group C of Mandatory Decree No. 44 ($1.25).

■ As we have already stated, the period of work involved herein started on May 18, 1960 and terminated on August 22, 1961.[3] The original Mandatory Decree No. 44

---

[3] In the complaint it was stated "from approximately February 1960 to August 1961."

only fixed a minimum wage of $1.05 per regular work hour for the "transit mix operator," and did not grant any coffee break period. By virtue of its first revision of 1960, effective September 6, 1960, the wage was raised to $1.25 per hour and a light meal period of at least fifteen minutes after the first two working hours was granted. Said first revision was in force up to the time when the second revision of May 21, 1962, which did not alter the minimum wage of the transit mix operator, was enacted. So that the employer paid petitioner the wage to which he was entitled from the beginning of his work to September 6, 1960, during which period he was not yet entitled to enjoy the daily light meal period.

It is after September 6, 1960 and until August 22, 1961, when his work terminates, that he should be paid the difference in wages, equivalent to 20 cents per hour, which he failed to receive and should receive in the manner already stated for the coffee break period which he did not enjoy.[4]

The judgment affirming the lower court rendered by the Superior Court, San Juan Part, on February 1, 1963 will be reversed, the original judgment of September 7, 1962 of the District Court, Río Piedras Part, will be set aside, and the District Court of Río Piedras will be ordered to render a new judgment in harmony with this opinion.

---

[4] Section 14 of Act No. 379 of 1948, which fixed a period of not less than one hour "destined for taking food," and its amendments by Acts Nos. 121 of 1961 and 88 of 1962, which compensate at a rate of twice the regular wage for work performed during said period, do not cover the coffee break. In the enumeration of "extra hours of work" contained in 29 L.P.R.A. § 273, the work performed during said period is not included.